NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIBEL SILVA, | Civil Action No. 2:16-cv-05040 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | July 13, 2017 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Maribel Silva's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Leonard Olarsch's ("ALJ Olarsch") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Olarsch's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision will be **AFFIRMED**.

**I.   PROCEDURAL AND FACTUAL HISTORY**

   **A.  Procedural History**

On November 5, 2012, Plaintiff applied for DIB.  (R. 17.)  Plaintiff alleged disability as of April 1, 2008 due to migraines, anxiety, depression, a pinched nerve, panic attacks, dizziness, neck pain, and back pain.  (R. 17, 200.)  Plaintiff's application was denied initially and upon reconsideration.  (R. 89-93, 96-98.)  ALJ Olarsch held a hearing on September 24, 2014, during which Plaintiff and a vocational expert, Ms. Tanya Edgehill ("VE Edgehill"), testified.  (R. 30-56.)  ALJ Olarsch issued a decision that Plaintiff was not disabled and denied Plaintiff's application for DIB.  (R. 14-25.)  On June 16, 2016, the Appeals Council denied Plaintiff's request for review, and ALJ Olarsch's decision became the Commissioner's final decision.  (R. 1-4.)

   **B.  Factual History**

   **1. Personal and Employment History**

Plaintiff was born on December 18, 1972 and was forty-one years old on the date of ALJ Olarsch's opinion.  (R. 21, 236.)  She completed high school and one semester of college.  (R. 201, 296.)  In addition, she previously worked as a customer service representative.  (R. 201-02.)

   **2. Physical Medical History**

The record demonstrates that numerous practitioners examined, consulted, and treated Plaintiff for physical medical issues associated with her disability claim.  The following is a summary of the evidence.

In September 2011, Plaintiff received an MRI of her back, which revealed no significant impingements on the lumbar spinal canal and no abnormalities aside from minimal posterior ridging.  (R. 265-66.)  Due to her severe headaches, Plaintiff visited the emergency room in June 2012 and received a CT scan with negative findings.  (R. 243-51.)

In October 2012, John E. Robinton, M.D. ("Dr. Robinton") treated Plaintiff for chronic headaches and noted moderate tightness and tenderness in the posterior cervical muscles. (R. 254.) There were no abnormalities found in the neurological, cranial nerve, motor, sensory, and cerebellar examinations. (*Id.*) Dr. Robinton attributed Plaintiff's symptoms to tension headaches and chronic cervical sprain or strain, noting that Plaintiff previously received an epidural for her neck pain by Dr. Chen. (*Id.*)

In October 2012, Plaintiff visited Richard Kang, M.D. ("Dr. Kang") and demonstrated full range of motion in the neck, normal range of motion in the C-spine, and normal range of motion in the lumbar spine. (R. 260-64). Dr. King attributed Plaintiff's bilateral neck pain to degeneration from a motor vehicle accident Plaintiff was involved in eight years prior and diagnosed Plaintiff with posttraumatic cervical facet arthropathy. (R. 263).

In December 2012, Dr. Kang noted that Plaintiff was doing remarkably well after her cervical facet injection, and Plaintiff reported approximately ninety-five percent pain relief in her neck. (R. 257-59.) During both follow-up appointments in January and August 2013, Plaintiff demonstrated no abnormalities and a normal range of motion in the cervical and lumbar spine. (R. 303-06.) In January 2013, Dr. Kang noted excellent but temporizing relief of her left-sided neck pain after her initial cervical facet injections. (R. 305-06.) In August 2013, despite reporting no significant changes in the patient's physical examination, Dr. Kang noted that Plaintiff's pain complaints worsened. (R. 303-04.)

In January 2013, Dr. Kang completed two reports regarding Plaintiff's impairments, which contain inconsistent information. (R. 280-82, 286-88.) On January 16, 2013, Dr. Kang noted that Plaintiff had persistent back pain that was present one hundred percent of the time and bilateral neck pain that was becoming progressively worse on the left side. (R. 280-82.) Dr. Kang reported

3

that sitting, standing, walking, and exercising aggravated Plaintiff's pain, and Plaintiff could only sit for fifteen minutes at a time and stand for five minutes at a time before needing to alter her position. (*Id.*) He noted that Plaintiff could never look down, crouch, squat, and climb ladders; could rarely twist; could occasionally turn her head, look up, hold her head in a static position, stoop, and climb stairs; and would likely need to miss work more than four days per month. (*Id.*) After Plaintiff's January 22, 2013 appointment, just a few days after the prior report, Dr. Kang reported that Plaintiff had "no limitation" in standing, walking, or sitting and a limited ability to push or pull. (R. 286-88.)

### 3. Psychological Medical History

In March 2012, Sang W. Yoo, M.D. ("Dr. Yoo") evaluated Plaintiff for her anxiety and panic attacks and noted no suicidal or homicidal ideation. (R. 270-72.) Dr. Kang reported that Plaintiff denied depression and sleeping difficulty in October 2012 and continued to deny new depression, anxiety, and sleep symptoms in December 2012. (R. 257, 262.)

In March 2013, Steven Yalkowsky, Ph.D. ("Dr. Yalkowsky") evaluated Plaintiff's psychological symptoms for the New Jersey Division of Disability Services. (R. 295-97.) Plaintiff had been taking Xanax, Paxil, and Lithium to address mental health issues, but Plaintiff terminated therapy about a year before. (R. 295.) However, Plaintiff reported difficulty sleeping, socializing with people other than family members, and going outside of the comfort of her home. (R. 295-97.) Despite Plaintiff's depressed mood, Plaintiff exhibited intact social skills, typical reciprocal social interactions, logical and goal oriented thought processes, appropriate eye contact, articulate and concrete communication, and adequate receptive skills with minimal need for repetition or further elaboration to participate in the interview effectively. (R. 296-97.) Although Plaintiff's social history, such as her ability to complete college courses, suggests adequate cognitive

4

functioning, Plaintiff demonstrated difficulty performing tasks and concentrating during the evaluation. (*Id.*) Dr. Yalkowsky diagnosed Plaintiff with a global assessment of functioning ("GAF") score of forty-five, indicating significant problems affecting occupation, travel, and social functioning. (*Id.*)

In June 2013, the State agency psychological consultant's observation demonstrated that Plaintiff had marked limitations understanding and remembering detailed instructions and moderate limitations maintaining concentration for extended periods, completing a normal workweek without interruptions, interacting with the general public, responding to criticism from supervisors, and adapting to change. (R. 80-81.) However, Plaintiff demonstrated no significant limitations remembering locations and work procedures, carrying out very short and simple instructions, performing activities within a schedule, maintaining regular attendance, working in coordination with others, making simple work-related decisions, maintaining socially appropriate behavior, setting realistic goals, and making plans independently of others. (*Id.*)

In March 2014, Dr. Yoo completed a medical source statement addressing Plaintiff's ability to do work-related activities and noted that Plaintiff was unable to tolerate any stressful environment or work with accommodation. (R. 325-26.)

### 4. Function Report

Plaintiff completed a function report on December 12, 2012 and described her daily activities as getting her children ready for school, bringing her children to and from school, preparing quick meals, washing dishes, helping her children with their homework, sometimes taking the dog outside, and getting her children ready for bed. (R. 190-198.) However, Plaintiff reported that she needs to take breaks during household chores because of her pain and needs others to accompany her when she goes out. (*Id.*) In addition, she experiences trouble sleeping,

5

panic attacks, and difficulty being around many people. (*Id.*) She shops for groceries in the morning when she is on Xanax to avoid panic attacks. (R. 194.)

### 5. Hearing Testimony

ALJ Olarsch held a hearing on September 24, 2014, during which Plaintiff and VE Edgehill testified. (R. 30-56.) Plaintiff testified that she experienced difficulty turning her head to the left; standing, sitting, and walking for long periods; lifting more than ten pounds; and going to crowded places. (R. 30-47.) When Plaintiff was a customer service representative, she missed work about four to five times a month due to headaches and developing anxiety. (R. 37-38.) Her employer did not fire her, but Plaintiff left due to her high-risk pregnancy. (R. 38, 50.) Plaintiff testified that she did not return to her position because of her stress and anxiety rather than because she had an infant at home. (R. 50-51.) Plaintiff also testified that she experienced headaches four to five hours a day and managed her pain through medication and injections that lasted for two to three weeks. (R. 39.) She stated that her anxiety medication relieves panic attacks for about two to three hours but that she must take three doses daily to perform her activities without panic attacks. (R. 47-48.) Plaintiff explained that she makes her children breakfast in the morning but that her mother-in-law otherwise cooks. (R. 43.)

VE Edgehill testified that a hypothetical individual with Plaintiff's education, training, work experience, and functional limitations could not perform Plaintiff's previous occupation as a customer service representative. (R. 53-54.) ALJ Olarsch determined that Plaintiff's limitations are: occasional postural maneuvers; frequent turning of head to the left side; occupations which do not require exposure to dangerous machinery and unprotected heights; simple, routine, repetitive, and unskilled tasks; occasional interaction with supervisors, coworkers, and the general public; up to ten percent of the work day off task; and up to one day a month of unanticipated absences. (*Id.*)

VE Edgehill testified that a hypothetical individual with Plaintiff's background and limitations could perform the occupations of Compact Assembler, Preparer, and Envelope Addresser, which exist in substantial numbers in the national economy. (R. 54.) However, if a hypothetical individual missed four days a month or was off task up to fifteen percent of the time, the individual could not perform any work in the national economy. (R. 54-55.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)

7

(internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B. The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A

claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's

"physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.  DISCUSSION

On November 25, 2014, ALJ Olarsch applied the five-step disability test and determined that Plaintiff was not disabled between the onset date and the date last insured. (R.14-25.) ALJ Olarsch's findings are supported by substantial credible evidence. There is no basis for remand or reversal because Plaintiff's medical history is sparse, and ALJ Olarsch appropriately considered all of Plaintiff's medically supported complaints.

At step one of the five-step test, ALJ Olarsch determined that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of April 1, 2008 through her date last insured of December 31, 2013. (R. 19.); *see* 20 CFR 404.1571 *et seq*. At step two, ALJ Olarsch found that Plaintiff's degenerative disc disease, affective disorders, and anxiety disorders are severe impairments because they are medically determinable impairments which affect Plaintiff's mental and physical abilities to do one or more basic work activities for a continuous period of more than twelve months. (R. 19.); *see* 20 CFR 404.1520(c). This finding is supported by substantial medical evidence in the record.

11

At step three, ALJ Olarsch found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).[1] (R. 19-20.) Plaintiff's medical records do not present evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis under medical listing 1.04. (*Id.*) Medical listing 1.04A requires nerve root compression consisting of neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss with sensory or reflex loss, and a positive straight-leg raising test if there is involvement of the lower back. (*Id.*) Medical listing 1.04B requires medically confirmed spinal arachnoiditis resulting in burning, dysesthesia, and the need to change position or posture more than once every two hours. 20 CFR Part 404, Subpart P, Appendix 1, § 1.04(b). In addition, listing 1.04C requires lumbar spinal stenosis resulting in pseudoclaudication with chronic nonradicular pain, weakness, and the inability to ambulate effectively. (R. 20.) The objective medical evidence in the record does not establish the requirements of the listed impairments.

ALJ Olarsch found that Plaintiff's mental impairments did not meet Paragraph B criteria of affective disorders under 12.04 and anxiety-related disorders under 12.06. (R. 20.) Paragraph B criteria requires that the mental impairment result in at least two of the following with extended duration: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. (*Id.*) A marked limitation consists of more than a moderate

---

[1] Although Plaintiff argues that ALJ Olarsch did not consider her ailments in combination, an ALJ need not "use particular language or adhere to a particular format in conducting his analysis . . . [so far as] there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); (Pl. Br. at 10-11.) The ALJ properly considered Plaintiff's ailments separately and in combination and determined that they do not meet or medically equal the severity of a listed impairment. (R. 20.)

limitation but less than an extreme restriction. (*Id.*) ALJ Olarsch properly considered Plaintiff's moderate restrictions in activities of daily living; social functioning; and concentration, persistence, or pace. (*Id.*) In addition, Plaintiff experienced no periods of decompensation for an extended duration. (*Id.*) Although Plaintiff's anxiety renders it difficult for her to be in busy places or go outside of the comfort of her home, the record demonstrates that Plaintiff interacts with her family, takes her children to and from school, helps her children with their homework, and takes the dog outside. (R. 190-98.) There is substantial evidence supporting ALJ Olarsch's determination that Plaintiff's mental impairments do not cause the requisite marked limitations.

ALJ Olarsch properly determined that Plaintiff's mental impairments did not meet Paragraph C criteria. (R. 20.) Paragraph C criteria for affective disorders under listing 12.04 includes a medically documented history, for at least two years, of a chronic affective disorder that causes more than a minimal limitation of the ability to do basic work activities as well as symptoms currently attenuated by medication or psychosocial support. (R. 20.) In addition, the evidence must demonstrate repeated episodes of decompensation, residual disease process that results in such marginal adjustment that even a minimal increase in mental demands or change of environment would cause decompensation, or the inability to function outside of a highly supportive living arrangement for at least one year. (R. 20-21.) ALJ Olarsch properly determined that Plaintiff's affective disorders did not meet Paragraph C criteria. (*Id.*) Paragraph C criteria for anxiety related disorders under listing 12.06 requires a complete inability to function independently outside the area of one's home. 20 CFR Part 404, Subpart P, Appendix 1, § 12.06(c). Substantial evidence in the record supports ALJ Olarsch's determination that Plaintiff's anxiety related disorders did not meet Paragraph C criteria.

Before undergoing the analysis in step four, ALJ Olarsch determined Plaintiff's RFC. (R. 21-23.) ALJ Olarsch properly concluded that Plaintiff could perform light work but is limited to: occasional postural maneuvers; frequent head turning to the left side; occupations that do not require exposure to dangerous machinery or unprotected heights; simple, routine, repetitive, and unskilled tasks; ten percent of the work day off task; and up to one unanticipated absence a month. (*Id.*) In support of his finding, ALJ Olarsch referenced medical records from Plaintiff's MRI results, CT results, and evaluations with Dr. Kang and Dr. Yoo. (R. 22-23.) ALJ Olarsch properly considered all of Plaintiff's symptoms and complaints to the extent that they were consistent with the objective medical evidence in the record.

ALJ Olarsch followed the appropriate two-step process for his RFC determination. (R. 21.) He first determined whether there were medically determinable impairments and then evaluated the intensity, persistence, or functionally limiting effects of the symptoms. (*Id.*) In addition, where Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain and other symptoms were not substantiated by objective medical evidence, ALJ Olarsch properly evaluated the credibility of the statements based on the entire record of medical evidence.[2] (*Id.*)

---

[2] On appeal, Plaintiff contends that ALJ Olarsch dismissed Plaintiff's disabling pain. (Pl. Br. at 10.) However, ALJ Olarsch properly considered all of Plaintiff's symptoms to the extent that they could be accepted as consistent with the objective medical evidence. (R. 21.) Although Plaintiff's impairments could reasonably cause her symptoms and pain, the objective medical evidence in the record demonstrates that Plaintiff experienced ninety-five percent pain relief in her neck following injections. (R. 257-59.) Despite Plaintiff's history of panic attacks and depression, for which she receives treatment in the form of medication, Plaintiff first denied depression to Dr. Kang in October 2012 and continued to deny new depression, anxiety, and sleep symptoms in December 2012. (R. 257, 262.) Therefore, there is substantial evidence in the record that supports ALJ Olarsch's decision.

ALJ Olarsch afforded Dr. Kang's evaluation on January 22, 2013 substantial weight, including Dr. Kang's report that Plaintiff had "no limitation" in standing, walking, or sitting with a limited ability to push or pull. (R. 286-88.) However, ALJ Olarsch afforded little weight to Dr. Kang's inconsistent evaluation just a few days prior, on January 16, 2013, which described extreme limitations, including that Plaintiff could only sit for fifteen minutes at a time and stand for five minutes at a time before needing to alter her position. (R. 280-82.) ALJ Olarsch also afforded little weight to Dr. Yoo's report in March 2014 that Plaintiff could not work with accommodation or tolerate any stressful environment. (R. 325-26.)

There is substantial evidence in the record that supports ALJ Olarsch's physical RFC determination.[3] Plaintiff's MRI in September 2011 revealed no significant impingements or abnormalities, and Plaintiff's CT scan during her emergency room visit in June 2012 was negative. (R. 243-51, 265-66.) In December 2012, Dr. Kang noted that Plaintiff was doing remarkably well after her injections for pain management, and Plaintiff reported approximately ninety-five percent pain relief in her neck to Dr. Kang. (R. 257-59.) Although it is difficult to harmonize Dr. Kang's two inconsistent evaluations in January 2013—one that described extreme limitations and another that described no significant limitations in standing, walking, or sitting—Dr. Kang repeatedly highlighted that Plaintiff demonstrated significant pain improvement from injections, full range of motion in the neck, and normal range of motion in the cervical and lumbar spine. (R. 257-59, 260-64, 280-82, 286-88, 303-06.)

---

[3] Plaintiff contends that ALJ Olarsch failed to articulate a proper rationale for the RFC determination. (Pl. Br. at 9.) Yet, ALJ Olarsch considered all the medical evidence in the record and followed the appropriate two-step process by determining whether there were medically determinable impairments and evaluating the intensity, persistence, or functionally limiting effects of the symptoms. (R. 21.) There is substantial objective medical evidence that supports ALJ Olarsch's RFC determination.

15

In addition, there is substantial evidence in the record that supports ALJ Olarsch's psychological RFC determination.[4] Plaintiff's record of psychological medical history does not support Dr. Yoo's statement regarding Plaintiff's inability to do any work with accommodation. (R. 325-36.) Plaintiff denied depression to Dr. Kang in October 2012, and in March 2013, she demonstrated intact social skills, social interactions, logical thought processes, and communication. (R. 257, 262, 295-97.) In addition, the State agency psychological consultant observed that Plaintiff could carry out short and simple instructions, perform activities within a schedule, work in coordination with others, maintain attendance, remember work procedures, and make simple work-related decisions with no significant limitations. (R. 80-81.)

At step four, after making the RFC determination, ALJ Olarsch properly determined that Plaintiff was unable to perform any of her past relevant work because her RFC precluded greater than unskilled work, and Plaintiff's previous occupation as an Assistant Service Representative was semiskilled. (R. 23-24.) VE Edgehill's testimony on September 24, 2014 supports ALJ Olarsch's finding at step four. (R. 53-54.)

At step five, ALJ Olarsch found that Plaintiff can perform work that exists in significant numbers in the national economy, considering her age, education, work experience, and RFC. (R. 24-25.) ALJ Olarsch properly based his decision on VE Edgehill's direct testimony. (R. 24, 54.) VE Edgehill testified that an individual with Plaintiff's age, education, work experience, and RFC

---

[4] Plaintiff also argues that ALJ Olarsch afforded Plaintiff's twin psychiatric disorders cursory analysis in the RFC determination. (Pl. Br. at 9.) However, ALJ Olarsch considered Plaintiff's affective and anxiety disorders, including her depressive symptoms and panic attacks, to determine that Plaintiff: could only perform simple, routine, repetitive, and unskilled tasks; needed an occupation with ten percent of the workday off task; needed up to one unanticipated absence a month; and could only perform jobs that did not require exposure to dangerous machinery or unprotected heights. (R. 21-23.) There is substantial evidence in the record that supports his opinion.

would be able to perform the requirements of a Compact Assembler, Preparer, and Envelope Addresser—each of which has an excess of at least 140,000 jobs in the national economy. (R. 54.) ALJ Olarsch credited VE Edgehill's testimony as consistent with the information contained in the Dictionary of Occupational Titles. (R. 25.) After correctly following the five-step test, ALJ Olarsch found that Plaintiff was not disabled under the Act. There is substantial medical evidence supporting his decision.

## IV. CONCLUSION

This Court finds that ALJ Olarsch's factual findings are supported by substantial credible evidence in the record. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:    Parties